**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHELE D. DESTEFANO,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-1595-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for a period of disability and Supplemental Security Income benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

### *I. BACKGROUND*

#### A.     **Procedural History**

Plaintiff filed for a period of disability and Supplemental Security Income benefits on January 14, 2002. R. 16, 56-61. She alleged an onset of disability on November 18, 2001, due to back, neck, shoulder, and arm pain, carpal tunnel syndrome, colitis, chronic stomach pain, depression and fainting

spells/seizures. R. 36, 40, 68, 70, 76-77, 101, 559-64, 576, 629. Her application was denied initially and she requested an administrative hearing before an Administrative Law Judge that resulted in an unfavorable hearing decision on December 14, 2004. R. 16, 52-53, 378-83, 556-82.

The Appeals Council granted Plaintiff's request for review and remanded the case for further administrative proceedings on April 22, 2005. R. 391-392. A different Administrative Law Judge, John D. Thompson, Jr. (hereinafter referred to as "ALJ") held further hearings on February 27, 2006, and June 28, 2006. R. 583-608, 613-37. In a decision dated November 17, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 16-26. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on April 11, 2009[1]. R. 8-11. Plaintiff filed this action for judicial review on September 15, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born April 23, 1967. R. 56. She completed the eleventh grade. R. 628. Her longest employment was as a bartender. R. 87, 95.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of back, neck, and arm pain, carpal tunnel syndrome, colitis, and chronic stomach pain. R. 36, 40, 68, 70, 76-77. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff had a history of the following severe impairments including abdominal pain secondary to colitis, cervical, lumbar, and thoracic strain, and fibromyalgia, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19-21. The ALJ determined that Plaintiff retained the

---

[1] There was a dispute about the timeliness of service of the Appeals Council decision as raised by the Commissioner in a Motion to Dismiss, however, following Plaintiff's filing of the well-documented Response, (*see* Doc. 14 & aff.) the Commissioner withdrew the Motion to Dismiss. Doc. 17.

residual functional capacity (RFC) to perform light work with certain limitations, as she could lift up to 20 pounds up to 1/3 of the work day and lift up to ten pounds frequently and sit/stand/walk for six hours during an eight-hour day; occasionally bend, stoop, crouch, crawl, and climb. R. 21. The ALJ also found that Plaintiff had no manipulative limitations, environmental limitations, communicative limits or mental limits. R. 21. In making this determination, the ALJ reviewed Plaintiff's testimony regarding her limitations and found that it was not totally credible because her allegations of pain and other symptomatology were disproportionate to the objective medical findings. R. 23. A medical expert, Dr. George Fipp, M.D., a board certified orthopaedic surgeon, testified at the hearing that he agreed with the RFC of the consulting orthopedic surgeon (Dr. Ryan) in opining that the only work-related limitations were postural limitations such as occasional climbing, balancing, stooping, kneeling, crouching and crawling. R. 16, 22. Dr. Fipp also testified that fibromyalgia is not a disabling diagnosis and would not be expected to prevent Plaintiff from working for any 12 month period. R. 22.

The ALJ determined that Plaintiff had no past relevant work. R. 25. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as office helper, ticket seller, cashier II, mail clerk, and surveillance system monitor. R. 25-26. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 26.

Plaintiff now asserts four points of error. First, she argues that the ALJ did not apply the correct legal standards to her radiculopathy, anxiety, and carpal tunnel syndrome. Second, she contends that the ALJ did not apply the correct legal standards to the opinions of her treating physicians and the non-examining consulting physician. Third, Plaintiff argues that the ALJ's

residual functional capacity ("RFC") assessment is not supported by substantial evidence or the application of the correct legal standards. Fourth, she asserts that the ALJ erred finding that jobs exist in the national economy that Plaintiff could perform. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

*A.     Whether radiculopathy, anxiety, and carpal tunnel syndrome were severe impairments*

Plaintiff argues that the medical evidence reflected her radiculopathy, anxiety, and carpal tunnel syndrome, and the ALJ erred in not applying the correct legal standards to find these impairments to be severe. The Commissioner argues that because Plaintiff sustained her burden at the second step in the sequential evaluation process, the ALJ found that she had a history of "severe" impairments and proceeded to the remaining steps in the sequential evaluation process for deciding the disability claim. R. 19, Finding 2. The Commissioner argues all that is required at Step 2 in the sequential evaluation process is for the ALJ to find a "severe" impairment/combination of impairments and then continue on in the sequential evaluation process, which the ALJ did in this case because he found that Plaintiff had other impairments which were "severe."

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. An

impairment qualifies as "severe" under the regulations only if it limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a) (2009); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found in Plaintiff's favor at Step 2 of the sequential evaluation process by finding that she had a history of severe impairments from abdominal pain secondary to colitis, cervical, lumbar and thoracic strain; and fibromyalgia (R. 19) and continued with the other steps of the sequential evaluation process to find Plaintiff could perform light work with certain limitations. R. 23-25. The issue in this case is whether and to what extent radiculopathy, anxiety, and carpal tunnel syndrome limited Plaintiff's ability to work. The ALJ found that Plaintiff's impairments limited her to light work with certain limitations. R. 25.

*1. Anxiety*

The ALJ did not find Plaintiff's anxiety to be severe. Plaintiff argues that an incomplete and invalid psychological evaluation is not substantial evidence to contradict prescriptions and notations of anxiety by treating physician. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's anxiety was not severe.

In his decision, the ALJ explained that he did not include anxiety as a severe impairment because Plaintiff did not cooperate in the consultative examination:

> The [ALJ] did not include any medically determinable mental impairment. On August 2, 2004, Bruce G. Borkosky, M.D., a consulting psychologist, concluded that the claimant's evaluation was not indicative of any severe mental impairment. Furthermore, the claimant failed to cooperate with the complete examination protocol. Dr. Borkosky reported that he attempted to administer the Minnesota Multiphasic

> Personality Inventory ("MMPI") but that the claimant decided to discontinue the testing. Additionally, Dr. Borkosky reported that the claimant refused to complete the "history taking portion of the exam." The regulations provide that if a claimant refuses to take part in a consultative examination or test which the [SSA] arranges to get information that is needed to determine the claimant's disability, the Administration may find that the claimant is not disabled or blind.

R. 21 (internal citations to medical records omitted).

Plaintiff argues that could not complete the psychological evaluation with Dr. Borkosky "due to her surroundings and the behavior of the psychiatrist." Doc. 23 (citing R. 634-35). She cites other notes from her treating physicians in the record: Dr. Benezette prescribed Xanax for "anxiety related to her condition" (R. 232) and Dr. Zwolinski noted that she had anxiety from her conditions thus he prescribed her Xanax. R. 289-90.

The Court finds the ALJ's reliance on the assessment completed by the consulting psychologist, Dr. Borkosky, indicating that Plaintiff had no more than "slight" mental restrictions, was based on substantial evidence. R. 21, 373-74. Under the SSA regulations, the ALJ is entitled to consider Plaintiff's failure to cooperate in completing the examination in determining if her impairments are severe. *See*, 20 C.F.R. § 416.918(a) (if a claimant refuses to take part in a consultative exam or necessary testing to determine disability, without good cause, the Commissioner may find her not disabled).

Because Plaintiff refused to complete portions of Dr. Borkosky's mental consultative exam, the ALJ was entitled to find that she did not have a determinable mental impairment. R. 21, 371-72. At the hearing on June 28, 2006, the ALJ specifically asked Plaintiff to explain why she failed to complete the testing, and he considered her response. R. 634-35. The ALJ is entitled to make such credibility findings in considering the Plaintiff's testimony. Accordingly, his decision to find her anxiety not severe is based on substantial evidence.

   *2. Radiculopathy and Carpal Tunnel Syndrome*

The ALJ found that Plaintiff's radiculopathy and carpal tunnel syndrome ("CTS") were not severe. Plaintiff contends it was error for the ALJ to find these impairments not severe because there was evidence in the record demonstrating that she has radiculopathy and carpal tunnel syndrome and they have a more than a minimal effect on her ability to work; thus, she argues, these conditions are severe impairments. As to the CTS, she points to an electromyography nerve conduction study which confirmed "median sensory neuropathy at or distal to the right wrist in the right upper extremity indicative of a mild carpal tunnel syndrome" in September 2001; Dr. Benezette noted positive Tinel's sign and diagnosed *suspected* carpal tunnel syndrome. R. 199-201. At the consultative examination by Dr. Narula, she noted positive Tinel's sign on the right and noted that Plaintiff had been diagnosed with carpal tunnel syndrome. R. 354-55. Dr. Zwolinski gave Plaintiff carpal tunnel splints in October 2003. R. 287.

As to her radiculopathy, Plaintiff cites objective test results such as an electromyography nerve conduction study which showed a C6 radiculopathy of the right upper extremity with active degenerative changes (R. 201), a positive Spurling's test confirming cervical radiculopathy (R. 193, 196, 211, 237), and examinations by treating physicians Dr. Benezette in 2001-2003 (R. 176, 178, 185, 189, 198, 204, 211, 231), Dr. Zwolinski in 2003-2005 (R. 287, 289, 319, 320, 460, 465, 473, 475), and the consulting physician Dr. Narula in 2004 (Tr. 355) which noted pain, spasms, decreased range of motion, and tenderness; and a diagnosis of radiculopathy or myofascial pain syndrome. Plaintiff points out Dr. Benezette (R. 182, 188, 191, 195, 232) and Dr. Zwolinski (Tr. 233, 281, 285) repeatedly opined that Plaintiff should not work; and that consulting physician Dr. Narula agreed that Plaintiff would be unable to complete an eight-hour workday based on limitations from her radiculopathy. R. 291-92, 356-57. Plaintiff argues that she was administered steroid injections, given a cervical collar (R. 283), and has undergone physical therapy for her cervical radiculopathy and lumbar strain. R. 158, 165. She argues that her radiculopathy has more than a minimal affect on her

-8-

ability to work, and is therefore a severe impairment, and the ALJ's reliance on a lack of "clinical correlation" was error because that is not the correct legal standard, but an arbitrary decision.

Plaintiff argues the ALJ contradicted his own findings in that his only stated reason for not finding Plaintiff's CTS to be severe was based on grip strength tests. The ALJ found:

> In addition to the above-identified medically determinable severe impairments, the claimant has alleged that she suffers from chronic back pain, carpal tunnel syndrome and seizures. In 2001, cervical and lumbar spine magnetic resonance imaging ("MRI") scans were within normal limits, and electromyogram ("EMG") studies revealed C-6 radiculopathy to the right and carpal tunnel syndrome. There is little clinical correlation, however, for either condition and Dr. Zwolinski subsequently concluded that the claimant was "neurologically intact." Notwithstanding the lack of clinical findings, Dr. Zwolinski recommended that the claimant wear some carpal tunnel splints.
>
> In December 2003, the claimant reported injuring her back when she fell on some stairs. X-rays, however, were negative and a June 2004 lumbar spine MRI was relatively normal. Geeta Narula, M.D., a consulting physiatrist, examined the claimant in August 2004 and diagnosed bilateral carpal tunnel syndrome. Dr. Narula noted that the claimant displayed a positive Tinel's sign on the right. Yet, the claimant had a right-handed grip strength of 40 pounds and a left-handed grip strength of 25 pounds.
>
> Based on these grip strengths and the lack of ongoing treatment, the [ALJ] finds that she is not significantly limited as a result of any carpal tunnel syndrome and therefore, did not include this condition as a medically determinable severe impairment. The [ALJ] did not include C6 radiculopathy as a medically determinable impairment because there is no clinical correlation.

R. 20 (internal citations to medical records omitted). Plaintiff argues that grip strength is not the same as a lack of pain, and the ALJ's opinion that grip strength precludes severe carpal tunnel syndrome is a medical opinion which the ALJ is not qualified to render.

In actuality, the ALJ based his finding of a lack of severe impairment for Plaintiff's CTS on the lack of ongoing treatment which has support in the record. There is no mention of active CTS (as opposed to a history of it) or treatment after 2003 in the treating physician's records although Plaintiff stated at the May 2004 hearing (before a different ALJ) that she was wearing braces on both arms because the pain in her neck radiates all the way down to her fingers. R. 562. When asked

specifically for the symptoms of her CTS, she explained that she experienced "sharp shooting pain. I have trouble carrying things, even as bad as carrying a glass of water or a cup of coffee." R. 562.

However, in June 2004, her treating physician Dr. Zwolinski noted that Plaintiff was having more pain with numbness in her lower extremities, but "most of the time her pain level is under good control [and she is] able to carry out her [activities of daily living] without significant difficulties with roxicodone and soma. R. 319. Although Dr. Zwolinski prescribed carpal tunnel splints for Plaintiff in October 2003 (R. 287), Dr. Ryan, an orthopedic surgeon who performed a consultative examination in August 2004 (same time as Dr. Narula), noted that Dr. Zwolinski had given Plaintiff carpal tunnel splints for symptoms suggestive of mild carpal tunnel syndrome, but Dr. Ryan specifically noted that Dr. Zwolinski's examination had shown that she had no motor weakness and no neurological deficits. R. 361-62.

Similarly, there was a lack of objective medical evidence to explain Plaintiff's complaints regarding radiculopathy. Dr. Ryan, the consultative orthopedic surgeon, was "unable to explain the cause for this patient's persistent pain" in spite of extensive diagnostic testing. R. 362. "She has had no neurological deficits and her diagnosis for myofascial pain syndrome is based on subjective findings. I am unable to find any objective cause for her present pain complaints." R. 362. Dr. Fipp noted these findings in rendering his medical expert opinion at the hearing. The ALJ's reliance on these opinions (R. 19-20) and finding Plaintiff's CTS and radiculopathy were not severe were thus based on substantial evidence[2].

### B. RFC and the treating physicians' opinions.

---

[2] The Commissioner also argues that, since the ALJ found Plaintiff had other severe impairments and continued past Step 2 to complete the rest of the five-step process, any error was of no moment, citing *Counci v. Commissioner* (11th Cir. 2004) (unpublished - Doc. 24). Because the ALJ's decision was based on substantial evidence, the Court need not reach this issue.

-10-

Plaintiff claims that the ALJ should not have found her able to perform a light work in light of limitations assigned by Drs. Benezette, Zwolinski, Narula and the non-examining State consultant which would preclude the performance of light work. Plaintiff also argues that the ALJ's finding that Plaintiff could sit/stand/walk for 6 hours during an 8 hour day, with no manipulative or mental limitations, was not supported by the medical evidence of record, *e.g.*, severe carpal tunnel syndrome and anxiety, as well as the treating physicians' opinions that she could not complete a normal workday.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that "[t]he combined opinions of Drs. Benezette, Zwolinski and Narula deserve controlling weight." Doc. 23 at 16-20. Plaintiff relies on opinions from her treating physician, Dr. Benezette, who saw Plaintiff from 2001 to 2003, and performed steroid injections (R. 201), treated her dislocated shoulder, prescribed physical therapy, and ordered the electromyograph testing.  R.

-11-

165, 176, 178, 181, 185, 189, 193, 196, 198, 201, 204, 211, 231. Plaintiff argues that Dr. Benezette opined that Plaintiff "should stop working." Doc. 23 at 18 (citing R. 232). However, at that visit in April 2003, Dr. Benezette specifically noted that Plaintiff was working "9 hours a day as a bartender, which requires her to stand. This is reportedly causing a significant increase in overall symptoms. On the weekends, she works at Lake Ellen police department assisting the police chief with clerical work . . . Patient states she does not feel she can continue much longer working due to her symptoms." R. 231. He specifically noted that she was restricted to sedentary activities, and she should not stand for long periods of time. R. 232. Dr. Benezette specifically opined that Plaintiff could sit for 4 hours; occasionally lift objects weighing up to 5 pounds; stand and walk for 3 hours, 1 hour at a time each; and only bend/stoop, squat, or reach for objects occasionally. R. 232, 234-35.

Plaintiff also relies on the record of Dr. Zwolinski who treated Plaintiff from 2003 to 2005 after she fell down the stairs; he prescribed a cervical collar and performed steroid injections, as well as a non FDA medication for her pain. R. 236, 256, 279, 283, 287, 289, 319, 320, 459, 460, 465, 473, 475. On a non-SSA form dated May 2004, Dr. Zwolinski opined that Plaintiff could only sit, stand, or walk for 30 minutes in an 8 hour day, could lift and carry less than ten pounds, with other manipulative limitations, and had poor prognosis. R. 291-92.

Dr. Narula performed a consultative examination in August 2004 and opined that Plaintiff "would not be able to perform any activity that required prolonged standing, walking, lifting, carrying, bending or stooping. *She probably could work in a sedentary capacity where she could sit and stand and change her position at will.* She is on a fair amount of narcotic medications for her pain and this will affect her cognitive functioning." R. 354-55 (emphasis added). On the RFC questionnaire, Dr. Narula opined that Plaintiff could stand/walk less than two hours in an eight hour day, and sit less than six hours, however, she failed to check the box to "periodically alternate sitting and standing." R. 356-57.

-12-

In determining Plaintiff's RFC, the ALJ set forth his reasons for rejecting the highly-restrictive functional limitations as opined by Plaintiff's treating physicians:

> Pursuant to the Appeals Council Order of Remand, the [ALJ] solicited medical expert testimony to clarify the nature and severity of the claimant's impairments. Dr. Fipp noted that in August 2004, Dr. Ryan was unable to offer a diagnosis for the claimant's pain complaints, and he saw no restrictions with her ability to work. James Pl Ryan, IV, M.D., a consulting Orthopedic Surgeon, examined the claimant on August 10, 2004 and reported that he was unable to explain the cause for the claimant's persistent pain and that he was unable to find an objective cause for her pain complaints. Dr. Ryan reported that the claimant had undergone extensive diagnostic testing, had no neurological deficits and her diagnosis of myofacial pain syndrome was based on subjective findings. Based on the lack of findings, Dr. Ryan concluded that there was no reason for restrictions regarding her ability to work.
>
> Dr. Fipp testified that he agreed with Dr. Ryan's residual functional capacity assessment. The only work related limitations identified by Dr. Ryan were postural limitations, as he restricted the claimant to only occasional climbing, balancing, stooping, kneeling, crouching anc crawling. Dr. Fipp further testified that fibromyalgia is not a disabling diagnosis and would not be expected to prevent the claimant from working for any 12 month period. Upon questioning by the claimant's attorney, Dr. Fipp testified that all medications have some potential side effects, but also testified that none of the claimants' reported medications would be expected to result in any disabling adverse side effects.
>
> * * *
>
> Dr. Zwolinski has completed forms indicating "no work." The [ALJ] has not attached any significant weight to these forms as they are unsupported by any cogent medical rationale and are not corroborated by the claimant's essentially normal physical examinations and diagnostic testing. Likewise, the [ALJ] has not attached significant weight to a medical assessment that Dr. Zwolinski completed in May 2004 as his only rationale is "unable to do." Dr. Zwolinski did not describe any medical findings or symptoms to support the assessed limitations. Rather, it is plain that Dr. Zwolinski simply accepted the claimant's subjective complaints. For example, even before ordering a lumbar MRI, Dr. Zwolinski diagnosed lumbar radiculopathy. The subsequent MRI revealed only minimal disc bulging at L4-5 and L5-S1, without spinal canal stenosis or neural foraminal narrowing.
>
> [A]fter considering the medical opinion evidence, the [ALJ] finds that the claimant has had the residual functional capacity to sit/stand/walk for 6 hours during an 8 hour day, lift 20 pounds up to 1/3 of the work day, and lift 10 pounds or less frequently, occasionally bend, stoop, crouch, crawl, and climb. The claimant has no manipulative limitations, environmental limitations, communicative limits or mental limitations. This finding is more restrictive than the opinions of Dr. Fipp, the medical expert and Dr. Ryan, the consulting orthopedic surgeon. It is consistent with the opinions of the

> State agency medical consultants. The [ALJ] has not accepted the more restrictive residual functional capacity assessments provided by Drs. Benezette, Zwolinski and Narula as they are not supported by objective abnormalities or any medical rationale.

R. 23 (internal citations to medical records omitted).

As the Commissioner argues, the ALJ properly noted that treating source Dr. Zwolinski's May 2004 assessment did not set forth medical findings or documented clinical symptoms to support the assessed limitations. R. 22, 291-92. When the Appeals Council remanded the case in April 2005, it ordered the ALJ Thompson, if warranted by the record on remand, to obtain evidence from a ME to clarify the nature and severity of Plaintiff's impairments and resulting limitations. R. 392. The ALJ called the ME, orthopedic surgeon Dr. Fipp, to testify at the February 2006 hearing and appropriately relied on it in reaching his decision. R. 16-26, 587-604. Dr. Fipp testified at the hearing that he had reviewed Plaintiff's medical records, but Plaintiff's x-ray reports did not show any significant abnormalities. R. 588-90. Both Dr. Fipp and Dr. Ryan, orthopedic specialists, refuted Dr. Zwolinski's lack of objective medical evidence for his diagnosis of Plaintiff. Dr. Ryan consultatively examined Plaintiff in August 2004 and reviewed her medical records, including records from Dr. Zwolinski. Based on Dr. Ryan's examination of Plaintiff, range of motion testing, and review of the records, Dr. Ryan stated that Plaintiff has no neurological deficits, and there was no medical reason for the placement of work restrictions. R. 362. Dr. Ryan completed a source assessment, specifically opining that Plaintiff had no restrictions in lifting/carrying, standing and/or walking or sitting, and she could occasionally perform postural activities, such as balancing and stooping. R. 366-69. Dr. Fipp testified that he had reviewed consultative examiner Dr. Ryan's assessment and he agreed with Dr. Ryan's assessment and found no basis for any physical limitations on Plaintiff. R. 594, 596-98. As the Commissioner notes, the ALJ also properly assessed Plaintiff's credibility and relied on Plaintiff's statements that she could complete her daily activities (R. 24), including Plaintiff's reports in the medical records that her pain level was reduced when she took her medications and her quality of life

-14-

improved. R. 24, 282-84, 286, 288. The ALJ specifically noted Plaintiff's reports that she could cook, do light cleaning, fold laundry, drive, run routine errands; and, in February 2004, she reported walking a lap around a local football field for exercise twice a week. R. 24, 282-88. The ALJ's rejection of Drs. Benezette, Zwolinski, and Narula restrictive assessments, which were lacking objective medical support, and the ALJ's determination of Plaintiff's RFC were based on substantial evidence.

### C.     *Hypothetical question regarding other jobs in the national economy*

Plaintiff argues that the ALJ erred in finding that jobs exist in the national economy that Plaintiff could perform based on the VE's testimony because the ALJ omitted certain limitations from the hypothetical to the VE.

Once the ALJ finds that a claimant cannot return to her prior work or has no past relevant work, the burden of proof shifts to the Commissioner to establish that the claimant could perform (other) work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In

almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559.

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

For the reasons explained above, the ALJ's findings that Plaintiff's anxiety and carpal tunnel syndrome were not severe and his rejection of the extreme functional limitations of Plaintiff's treating physicians and Dr. Narula were based on substantial evidence. Accordingly, it was appropriate for the ALJ not to include any limitations from these conditions in the hypothetical to the VE. Thus, the ALJ's reliance on the VE's testimony in response to the hypothetical was based on substantial evidence.

## *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 5, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy